## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **Shawn White,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:24cv350 (PTG/WEF)** |
| | ) | |
| **Chadwick S. Dotson,** | ) | |
| **Respondent.[1]** | ) | |

### MEMORANDUM OPINION

Shawn White ("Petitioner" or "Mr. White"), a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his December 1, 2020 convictions in the Circuit Court of Norfolk City, Virginia for burglary, grand larceny, larceny of firearms, credit card theft, and conspiracy to commit burglary. Dkt. 1. On May 6, 2024, the Respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. Dkts. 13–15. Petitioner filed a response. Dkt. 20. On November 25, 2024, the Court advised Petitioner of his rights to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 22. On February 18, 2025, Mr. White filed three additional responses in opposition to the motion to dismiss. Dkts. 25–27. This matter is now ripe for disposition. For the reasons that follow, the Respondent's Motion to Dismiss must be granted, and the petition must be dismissed with prejudice.

### I. Background

Mr. White is detained pursuant to a final judgment of the Circuit Court of the City of

---

[1] Chadwick S. Dotson, Director of the Virginia Department of Corrections, has moved to be substituted as the respondent in this matter. Dkt. 15 at 1 n.1. Mr. White has also moved to amend his petition to substitute Jeffrey Artrip, Warden, Wallens Ridge State Prison as the respondent in this matter. Dkt. 11. The Court will grant Director Dotson's motion because further substitution will not be necessary if Mr. White is transferred to another institution. Mr. White's motion will be denied as moot.

Norfolk, Virginia entered on December 1, 2020. On September 3, 2020, he waived his right to trial by jury and was convicted in a bench trial of burglary, in violation of Virginia Code § 18.2-89; grand larceny, in violation of Virginia Code § 18.2-95; larceny of firearms, in violation of Virginia Code § 18.2-95; credit card theft, in violation of Virginia Code § 18.2-192; and conspiracy to commit burglary, in violation of Virginia Code § 18.2-89/18.2-22. *Commonwealth v. White*, Case Nos. CR19001800–00 through –04, at 57–58 ("CR at __").[2] At sentencing, the trial judge imposed a total term of imprisonment of twenty-eight years in prison for the five felony convictions and then suspended nineteen years and five months of the total term of imprisonment. *Id.* at 63–65.

Mr. White, by counsel, appealed his convictions to the Virginia Court of Appeals, raising one assignment of error—that the evidence was insufficient to establish he participated in the burglary. Dkt. 15-2 at 6. On July 19, 2022, the court found the evidence sufficient and affirmed his convictions. *Id.* at 57–64. The court summarized the evidence as follows:

> Around 6:30 a.m. on March 31, 2019, Jeremy Hitchcock ("Hitchcock") was awakened by the arrival of police officers who were investigating a report of a burglary at his home. Hitchcock identified some of his personal property which was lying in a neighbor's yard. He also discovered that his black 2016 Hyundai Sonata had been stolen and that the keys to the Hyundai and to his wife's van were both missing. Also missing were Hitchcock's wallet, his rifle and rifle case, a computer, and the contents of his lockbox. His wallet contained multiple credit cards, and the lockbox held social security cards and his marriage license. As a result, Hitchcock notified Hyundai Blue Link, a service that monitored the location of his car via GPS, that his black 2016 Hyundai Sonata had been stolen.
>
> As Hitchcock was being interviewed by the police, he received alerts on his phone concerning several attempts to use his credit cards, including one attempt at a nearby Walmart. Hitchcock informed the police of the credit card alerts. Shortly thereafter, Officer K. Ferree ("Ferree") received a report that a car was being "tampered with" a couple of blocks from Hitchcock's home and that the offense was "in progress." When Ferree investigated the report at a residence on Belgrave

---

[2] The trial judge granted defense counsel's motion to strike two related indictments that alleged Mr. White possessed a firearm after having been previously convicted of a violent felony (CR19001800–05), and possession of a firearm by a non-violent convicted felon within the past ten years (CR19001800–06). CR at 57–58.

Avenue, he found a vehicle with a broken window outside of the residence. Ferree also noticed a red Ford truck parked nearby, which subsequently proved to have been stolen. The owner of the vehicle with the broken window showed Ferree footage from his home security camera which depicted the red Ford truck and a black car arriving together outside the victim's residence. The video also showed the black car bumping into the red truck, the two men trying to break into a car, and both men subsequently fleeing in the black car. Investigator Todd ("Todd") testified that the black car depicted in the video was Hitchcock's car and that it collided with the red Ford truck on Belgrave Avenue.

Meanwhile, Hitchcock's GPS system placed his black Hyundai Sonata at a Walmart two and a half miles from the Belgrave Avenue residence. Officer C. Hudson ("Hudson") subsequently arrived at the Walmart around 8:16 a.m. and located the car in the Walmart parking lot with its engine still running. When Todd met Hudson at the Walmart at approximately 9:42 a.m., Todd searched the car and found credit cards bearing Hitchcock's name in the driver's door as well as a black wallet and other items belonging to Hitchcock.

After directing Hudson to impound the car, Todd entered the Walmart and reviewed surveillance footage with the store's loss prevention officer. The footage depicted Hitchcock's black Sonata arriving at the store at approximately 6:26 a.m. Two men exited the vehicle and entered Walmart at approximately 6:32 a.m. Todd recognized the driver of the black car as Robert Cahill ("Cahill"). Cahill put on a dark hooded sweatshirt as he entered the store. The other male, who was getting out of the front passenger seat, was wearing a gray or white baseball cap with a red brim. The men later exited the store, but entered the Walmart a second time at 7:33 a.m.

The footage showed that Cahill and his male companion in the red–brimmed hat purchased merchandise at separate registers using multiple credit cards, some of which Hitchcock later identified from the video images as resembling his stolen cards. The footage also depicted his male companion holding a car key fob that Hitchcock identified as the fob for his stolen car. Receipts generated from the Walmart register that Cahill's companion used reflected a variety of completed and declined credit card transactions from four different credit cards between 7:36 a.m. and 7:46 a.m. Todd testified that the credit card information on the receipts matched some of the credit cards stolen from Hitchcock's home. Hitchcock later identified the black vehicle as his stolen Hyundai Sonata. Cahill and his male companion exited the store a final time at 8:22 a.m.

Todd texted screenshots of the footage of Cahill and his male companion to Detective Gross ("Gross"), and Gross identified Cahill's companion as appellant, Shawn White. Gross testified that he was familiar with Cahill and White from other investigations and social media. Gross also noted that they were frequent companions and that Gross had interacted with White "in person." Gross stressed that he was "one hundred percent confident" that the man in the Walmart images was White, testifying that White's street name was "Foley."

The trial court found that the image sent to Gross was an image from the Walmart footage and concluded that Gross's identification of White was reliable. Further,

the trial court concluded that the evidence demonstrated "collaboration" between White and Cahill, reflected by the presence of the firearm in the truck and the video footage depicting them "passing off . . . multiple credit cards" between each other at Walmart.

*White v. Commonwealth*, Record No. 0918–21–1, 2022 Va. App. LEXIS 304, at *1–6 (Va. Ct. App. July 12, 2022) (footnote omitted). Mr. White, by counsel, then filed a petition for appeal in the Virginia Supreme Court alleging the same error, which that court refused on November 29, 2022. Dkt. 15-3.

On April 8, 2022, prior to the denial of his direct appeal by the Virginia Supreme Court, Mr. White filed a state petition for a writ of habeas corpus in the Virginia Supreme Court, alleging the following grounds for relief:

  a) Petitioner was denied his Fourteenth Amendment right to a fair trial "by the admission of unreliable identification [e]vidence in accordance with [F]ederal [R]ules of Evidence 701."
  b) Petitioner was denied his Sixth Amendment "right to effective assistance of Counsel, failing to properly prepare for trial."

Dkt. 15-4 at 6. The court dismissed the petition on February 16, 2023, Dkt. 15-5, finding that the portion of Claim (a) that alleged the trial court erred in admitting the identification testimony of Det. Gross was barred from habeas review under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). Dkt. 15-5 at 1. The court determined Claim (b) had three parts and found the first portion of Claim (b), which alleged that Mr. White's counsel was ineffective for not interviewing and subpoenaing an unidentified witness for trial, failed to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Dkt. 15-5 at 2. The next portion of Claim (b) alleged that Mr. White's counsel was ineffective for failing to subpoena Mr. White's co-defendant, Robert Cahill. The court concluded that this claim failed to satisfy either the "performance" or the "prejudice" prongs of the *Strickland* test because his counsel had determined that subpoenaing Mr. Cahill would have opened the door to incriminating evidence

4

against Mr. White. *Id.* at 2–4; *see Strickland*, 466 U.S. at 689 (habeas petitioner alleging ineffective assistance must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"). The court further found that trial counsel had made a reasonable tactical decision that was entitled to deference. Dkt. 15-5 at 2–4; Dkt. 15-6. The court found the final portion of Claim (b), which alleged that Mr. White's counsel was ineffective for failing to interview unnamed individuals, also failed to satisfy either the "performance" or the "prejudice" prongs of the *Strickland* test due to his failure to identify his purported witnesses and proffer their expected testimony. Dkt. 15-5 at 4–5.

## II. Present Petition

On February 14, 2024,[3] Mr. White filed a petition for a writ of habeas corpus, pursuant to 28 U.S. § 2254, in the United States District Court for the Western District of Virginia, which was transferred to this Court on March 5, 2024. Dkt. 3. The petition raises three claims:

I.     Counsel was ineffective for "failing to interview and subpoena Co-defendant" who "could have provided helpful testimony." Counsel "never interviewed [Mr. White's] co-defendant." Dkt. 1 at 6.

II.    Counsel was ineffective for "failing to interview and subpoena [an] eye witness to the crime scene" who would have testified that "she [had] only seen one white male at the scene of the crime." *Id.* at 8.

III.   Counsel was ineffective for "failing to prepare[,] properly argue and object to" Det. Gross's "lay opinion."[4] *Id.* at 9.

---

[3] The petition was filed on March 4, 2024 but is deemed filed on February 14, 2024 because that is the earliest Mr. White could have delivered it to correctional officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[4] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

### III. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires a petitioner present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A claim has not been "fair[ly] present[ed]" for exhaustion purposes if the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner convicted in Virginia must have presented the *same* factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *see Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002) (exhaustion requires a petitioner to present "'both the operative facts and the controlling legal principles,'" to the state court) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (exhausting the facts upon which a petitioner relies is an important aspect of exhaustion under the Anti-terrorism Effective Death Penalty Act of 1996, which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits."); *see Muhammad v. Clarke*, No. 1:11-cv-345, 2012 WL 259869, at *4 (E.D. Va. Jan. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's ruling) (citing *Kasi*, 300 F.3d at 501–02; *Pinholster*, 563 U.S. at 182–83), *appeal dismissed*, 474 F. App'x 979 (4th Cir. 2012). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the

6

petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).  Such claims are deemed to be simultaneously exhausted and defaulted.  *Id.*

Further, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619; *see also Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). A state procedural rule is "adequate" if it is "firmly established" and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 261, 263–64 (4th Cir. 1999); *see also Castille*, 489 U.S. at 351 (raising a claim in a manner in which its merits will not be considered "unless 'there are special and important reasons therefor'" does not constitute "fair presentation") (citations omitted).

Respondent admits that Claim I and Claim II are exhausted, stating both grounds were raised in Mr. White's state petition for writ of habeas corpus in the Supreme Court of Virginia. Dkt. 15 at 5 (citing *Matthews*, 105 F.3d at 911).  Respondent argues that the non-ineffective aspect of Claim III (the admission of Det. Gross's "lay opinion" identifying Mr. White from the video photo) was raised as Claim (a) in state habeas and was barred by the rule of *Slayton v. Parrigan*, rendering it exhausted and defaulted.  *Id.* at 2–3.  Respondent also argues that Mr. White did not raise a claim of ineffective assistance of counsel in state habeas regarding the admission of Det. Gross's testimony, and that if Mr. White now attempted to raise such a claim, the claim would be barred in state court as successive pursuant to Virginia Code 8.01-654(B)(2).  *Id* at 5–6; *see, e.g.*, *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).  Consequently, absent cause and prejudice, the ineffective assistance portion of Claim III is deemed simultaneously exhausted and defaulted.

7

**IV. Cause and Prejudice**

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence. *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim.") (quoting *Coleman*, 501 U.S. at 750). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *see Coleman*, 501 U.S. at 753–54. To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Importantly, a court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

A. *Establishing Cause for an Ineffective Assistance of Counsel Claim*

In his response to the motion to dismiss, Mr. White cites *Martinez v. Ryan*, 566 U.S. 1 (2012), and raises several arguments in support of his request that this Court review the merits of his allegation of ineffective assistance of counsel in his defaulted Claim III, that alleges counsel was ineffective for "failing to prepare[,] properly argue and object to" Det. Gross's "lay opinion." Dkt. 20 at 1, 5; Dkt. 1 at 9. First, Mr. White argues "that he requested his attorney make detective K. Gross['s] trial testimony part of his appeal and to argue that detective K. Gross['s] testimony did not meet the foundational requirements set forth in Virginia Rules of Evidence 2:701." He further claims that his attorney "neglected to do" so and that "resulted in petitioner's state habeas

corpus petition Claim to be procedurally barred," which is "cause and prejudice." Dkt. 20 at 1, 5.[5]

Next, Mr. White argues that counsel did not "properly" prepare for trial because counsel failed to interview Det. Gross about his personal knowledge of Mr. White's appearance, or review grand jury transcripts to develop "a meaningful line of questioning" on Mr. White's appearance. *Id.* at 2.[6] Mr. White acknowledges that counsel objected to Det. Gross's opinion testimony at trial, but argues that counsel also "should have argued" that Det. Gross's opinion testimony "did not meet the personal knowledge requirement in accordance with Va. Rules of Evidence 2:701." *Id.* at 4; Dkt. 25 at 2. Mr. White also contends that trial counsel should have engaged in further cross-examination of Det. Gross as to: (1) "whether he had personal knowledge of petitioner's appearance" because Det. Gross "changed his testimony" three times about how many times he had seen Mr. White in person; and (2) that the changes in Det. Gross's testimony constituted perjury. Dkt. 20 at 4; Dkt. 25 at 3. Finally, Mr. White argues that trial counsel should have "filed a motion to strike" Det. Gross's testimony because the evidence did not support an adequate foundation to establish that Det. Gross had sufficient personal knowledge of Mr. White's appearance and the inconsistencies in Det. Gross's testimony constituted perjury. Dkt. 20 at 4; Dkt. 25 at 3. Mr. White's response to Respondent's Motion to Dismiss misrepresents the record

---

[5] The "claim" to which Mr. White is referring to in his response was the substantive Claim (a) that he raised in state habeas, as the quoted portion of his response is alleging a claim was defaulted due to the actions of his counsel.

[6] There are no grand jury transcripts in the record, and no evidence that any grand jury proceeding in this case was transcribed, which is unlikely since Virginia does not provide for transcription of regular grand juries and only provides for transcription of the proceedings of special grand juries and multi-jurisdictional grand juries. *See* Va. Code §§ 19.2-212 and 19.2-215.9; *see also Robinson v. Clarke,* No. 1:16-cv-298, 2016 WL 4578331, at *5 n.8 (E.D. Va. Aug. 30, 2016) ("Failure to transcribe grand jury proceedings and provide the accused with a transcript of grand jury testimony is not a denial of due process. Nor is it an unconstitutional practice or an invasion of a constitutional right.") (quoting *State v. Levesque,* 281 A.2d 570, 572 (Me. 1971)) (collecting cases).

and attempts to apply the *Martinez* exception to claims of ineffective assistance of appellate counsel despite precedent expressly refusing to expand *Martinez* to such claims.

*Martinez* recognized a narrow exception for defaulted claims of ineffective assistance of trial counsel in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal, holding

> a prisoner may establish cause for a default of an ineffective-assistance [of trial counsel] claim . . . where the state courts did not appoint counsel in the initial-review collateral proceeding . . . [or] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*.

566 U.S. at 14. To establish cause, a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . that the claim has some merit." *Id.*; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

### B.  Applying *Martinez* to Mr. White's Claims

In interpreting *Martinez,* the Fourth Circuit reiterated that *Martinez* applies only to claims of ineffective assistance of trial counsel. "[A] federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if . . . the ineffective-assistance-of-trial-counsel claim is a substantial one." *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014). More recently, the Fourth Circuit has clarified what constitutes a substantial claim. "To invoke *Martinez*, [a petitioner] must demonstrate that this underlying ineffective assistance of counsel claim is substantial with reference to *Strickland's* two familiar prongs." *Sigmon v. Stirling*, 956 F.3d 183, 199 (4th Cir. 2020); *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020) (to satisfy that a claim is substantial under *Martinez*, a habeas petitioner must show that the claim "has some merit, with respect to both prongs of *Strickland*").

To the extent that Mr. White argues that his appellate counsel was ineffective for not raising

the claim on appeal, it is plain that *Martinez* is not applicable to that claim, and it therefore cannot serve as cause to excuse his default of federal Claim III. *Davila v. Davis*, 582 U.S. 521, 531 (2017) ("declining to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel"); *see also Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015) ("*Martinez* applies only to claims of ineffective assistance of trial counsel, not trial errors."). Accordingly, Mr. White's argument has no merit.

With regard to the remaining two portions of Claim III, Mr. White argues that his counsel did not properly prepare and cross-examine Det. Gross. The record establishes that neither argument is substantial.

Initially, Mr. White has not made a proper proffer of what counsel failed to uncover before trial, or what questions counsel should have asked Det. Gross, that were not asked, and what Det. Gross's answers would have been. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Bassette*, 915 F.2d at 940–41 (finding appellant's failure to "advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim). Mr. White posits several questions he argues his counsel should have asked Det. Gross, Dkt. 25 at 1–4, but he does not provide the answers to the questions—which, of course, must come from Det. Gross. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, a petitioner must provide "concrete evidence of what [the witness] would have testified to in exculpation," so that the reviewing court can adequately assess the significance of the decision not to call the witness). Because of his failure to proffer, Mr. White does not state a claim under the prejudice prong of *Strickland* and therefore he has not made out a substantial claim under

11

*Martinez.*[7]

Additionally, "[i]n analyzing counsel's performance under the first, 'deficiency' prong of the *Strickland* test, a reviewing court must be 'highly deferential' in scrutinizing trial counsels' tactics. As the Court succinctly put it: 'Even the best criminal defense attorneys would not defend a particular client in the same way.'" *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689). The Fourth Circuit has expressly held that the cross-examination of a witness is a matter of trial tactics. *See Sallie v. State of N. Carolina*, 587 F.2d 636, 640 (4th Cir. 1978) (finding cross-examination is a matter of trial strategy that cannot be second-guessed in a collateral habeas proceeding); *Hoots v. Allsbrook*, 785 F.2d 1214, 1219 (4th Cir. 1986) ("[C]ourts considering a claim of ineffective assistance should not second-guess strategic decisions of counsel."); *Higgs v. United States*, 711 F. Supp. 2d 479, 515 (D. Md. 2010) ("[C]ounsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess."), *aff'd*, 663 F.3d 726 (4th Cir. 2011). "Where, as here, trial counsel conducts a thorough and meaningful cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of [an ineffective assistance of counsel] claim." *Cardwell v. Netherland*, 971 F. Supp. 997, 1019 (E.D. Va. 1997). The record establishes that trial counsel was prepared to

---

[7] In one of his responses to the motion to dismiss, Mr. White argues that Det. Gross's testimony should have been excluded because it was "cumulative." Dkt. 27 at 2. This argument is unavailing. *Woodfox v. Cain*, 609 F.3d 774, 816–17 (5th Cir. 2010) (finding no prejudice from failure to object to hearsay when hearsay evidence was cumulative to other evidence on the same point) (citing *United States v. Allie*, 978 F.2d 1401, 1408–09 (5th Cir. 1992) (holding that the improper admission of cumulative hearsay evidence constituted harmless error)); *see also Wood v. Carpenter*, 907 F.3d 1279, 1295 (10th Cir. 2018) (finding no *Strickland* prejudice where excluded evidence "would have been substantially cumulative of other evidence already presented at both the hearing and at trial"). Mr. White also admits, with the exception of the burglary, that he participated with his co-defendant, Cahill, in the other crimes. Dkt. 25 at 7.

cross-examine Det. Gross regarding his identification of Mr. White, from both a factual and legal perspective.

At trial, defense counsel objected to Det. Gross's identification of Mr. White and counsel sustained his opposition throughout the entirety of Det. Gross's testimony.[8] Det. Gross testified that photos sent to him from the Walmart video footage were Cahill and "Shawn White." CR at 272. Counsel objected, raising a hearsay objection as well as "an opinion" objection to Det. Gross's testimony naming the persons in the photographs, *id.*, and counsel went back and forth with the trial judge before his objections were eventually overruled. *Id.* at 274. Thereafter, Det. Gross identified Mr. White, as he sat in the courtroom, as the person in the photograph taken from the Walmart video footage. *Id.* at 275.

Det. Gross explained that he was certain of his identification because he had "work[ed] cases before this incident, larceny cases," in which "Mr. White and Mr. Cahill," were persons "of interest," and he had viewed "other media, to include pictures of surveillance video of the two, that [he] was working. . . . [and he] knew Mr. White before from previous cases." *Id.* at 275–76. Det. Gross said Mr. White was known as "Foley on the street," he had met Mr. White in person before, and had seen Mr. White in person "no more than five" times. *Id.* at 276. On cross-examination, Det. Gross admitted he had never met Mr. White outside of his capacity as a law enforcement officer, they were not friends, and he could not remember if he had seen Mr. White in person before

---

[8] Det. Todd testified before Det. Gross, and trial counsel objected to Det. Todd's testimony that someone in the video footage was the same person as someone who had gotten out of the passenger seat of a black SUV as "opinion," and the objection was sustained. CR at 260, 263–64. Trial counsel also objected to Det. Todd's testimony about an April 2, 2020 video because there was no nexus between that video and the video of the use of the stolen credit cards in Walmart several days earlier, and again his objection was sustained. *Id.* at 262–64. Regarding identification of Cahill, the trial judge sustained an objection because the prosecutor had failed to lay a proper foundation. *Id.* at 250–51. The record establishes that trial counsel understood the foundation aspect of opinion testimony.

this "incident." *Id.* at 277–78. Det. Gross's basis for identifying Mr. White was through his "prior investigations." *Id.* at 278–79. Det. Gross had never had a conversation with Mr. White before his arrest in this case. *Id.* On re-direct, Det. Gross added that he knew the photo sent to him by Det. Todd was Mr. White based upon pictures in police databases, the DMV,

> pictures from social media, being Facebook, Instagram and other things. . . . working previous investigations, I knew Mr. Cahill for many years, and I knew that Mr. Cahill had a friend—was friends with Mr. White. . . . that I was able to identify [Mr. White] as the person that—Mr. White as the same person that Detective Todd sent me pictures of.

*Id.* at 281–82.

In response to questions from the trial judge, Det. Gross clarified that although he had testified the photograph "looked like" Mr. White, he had misspoken and meant to say that he was "a hundred percent confident that the person in the picture is Mr. White." *Id.* at 282. The trial judge inquired if Det. Gross identified Mr. White based upon Det. Gross's knowledge that Cahill and Mr. White were friends and were often together. *Id.* at 284. Det. Gross stated he

> knew that Mr. Cahill and Mr. White were friends and they—they do hang around each other quite—quite often, but regardless of that relationship, based on the picture . . . Detective Todd sent me I was still able to identify him through my previous investigations and the pictures I had seen of Mr. White to identify him.

*Id.* The record disproves allegations that counsel was not prepared and failed to object to Det. Gross's identification as improper opinion. Likewise, Mr. White's assertions that trial counsel failed to interview Det. Gross about his previous experiences is not borne out by the record, which includes trial counsel's questions on the number of times Det. Gross had met Mr. White in person and that Det. Gross never had a conversation with Mr. White prior to his arrest. CR at 278–79. In addition to a record that demonstrates counsel conducted a thorough and meaningful cross-examination, it is clear that, under Virginia law, the identification testimony satisfied the criteria

for admissibility.[9]

The admission of Det. Gross's identification testimony was consistent with Virginia precedent. In *Bowman v. Commonwealth*, the defendant was convicted of burglary after a witness identified him as the person in two video surveillance tapes. 516 S.E.2d 705, 706 (Va. Ct. App. 1999). On appeal, relevant to Mr. White's case, the defendant argued that the trial court erred in admitting the witness's identification testimony because it was inadmissible opinion testimony by a lay witness who had not been qualified as an expert. *Id.* at 707.[10] The *Bowman* court rejected

---

[9] Contrary to Mr. White's assertion that Det. Gross's changes or inconsistencies in his testimony were perjury, perjury consists of false testimony concerning a material matter, "given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory)." *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The trial judge in this matter had his own concerns about the testimony and clarified the record in a manner that precludes the possibility that Det Gross intended to deceive when he testified. *See United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."). Moreover, since Mr. White has conceded that Det. Gross's testimony was cumulative evidence and argues it should have been excluded on that ground, he cannot demonstrate that the testimony could have affected the trial judge's judgment. The trial judge was aware of the inconsistencies in Det. Gross's testimony and made his own determination regarding how much weight to give Gross's testimony. *See United States v. Chavez*, 894 F.3d 593, 601 (4th Cir. 2018) ("[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976) (citations omitted)); *Daniels v. Lee*, 316 F.3d 477, 494–95 (4th Cir. 2003) (finding that where testimony was corrected, "[h]ad there been any possibility of confusion, it was eliminated when [the witness] corrected herself."). Given that the trial judge resolved this matter to his satisfaction, counsel was not ineffective for not moving to strike Det. Gross's testimony under either prong of *Strickland* and this is not a substantial claim of ineffective assistance of counsel.

[10] Mr. White references Va. Rules of Evidence 2:701, which states as follows:

> Opinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness' perceptions. Lay opinion may relate to any matter, such as—but not limited to—sanity, capacity, physical condition or disability, speed of a vehicle, the value of property, identity, causation, time, the meaning of words, similarity of objects, handwriting, visibility or the general physical situation at a particular location. However, lay witness testimony that amounts only to an opinion of law is inadmissible.

that argument and held that "'[a] lay witness may offer an opinion as to the identity of a person.'" *Id.* at 707 (citation omitted). The court then pointed to the evidence in the record that provided the foundation for the admission of the witness's opinion that the defendant was the person in the video footage. *Id.* The foundation evidence included that the witness was the defendant's father-in-law and the grandfather of the defendant's two children, the witness had known the defendant for two years, and he recognized the defendant "not only in the videotapes but also in the Commonwealth's still photographs of the perpetrator made from the videotape." *Id. Bowman* "established that a lay witness is permitted to positively identify a person in a video for purposes of establishing their 'identity,'" and "observed that testimony on 'questions of identity' has been admissible in Virginia for over a century." *Cappe v. Commonwealth*, 896 S.E.2d 351, 358, 360 (Va. Ct. App. 2024) (quoting *Bowman*, 516 S.E.2d at 707; citing *Jordan v. Commonwealth*, 66 Va. (25 Gratt.) 943 (1874)).

Here, Det. Gross testified that he identified Mr. White based on personal knowledge gained through several previous investigations, during which he viewed police databases, including the DMV, and online postings. A proper foundation was laid for this aspect of Det. Gross's testimony when the trial judge clarified if Det. Gross was making the identification based upon Mr. White's known association with the co-defendant, Cahill, which Det. Gross denied. Det. Gross then reiterated the basis of his knowledge and testified that he was 100% sure the photo he was sent by

---

"The first prong of Rule 2:701 requires personal knowledge. The second prong of Rule 2:701 speaks to the necessity of the lay opinion testimony." *Cappe v. Commonwealth*, 896 S.E.2d 351, 358 (Va. Ct. App. 2024) (quoting *Harman v. Honeywell Int'l, Inc.*, 758 S.E.2d 515, 523 (Va. 2014)). *Cappe* observed that "Courts routinely have found that: '[T]estimony by those who knew defendants over a period of time and in a variety of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants.'" *Id.* at 359 (quoting *United States v. Ellis*, 121 F.3d 908, 927 (4th Cir. 1997)). *Cappe* added that "'[a] lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury.'" *Id.* at 359 (quoting *Ellis*, 121 F.3d at 926–27).

Todd was Mr. White. *See Smith v. Commonwealth*, 576 S.E.2d 465, 468 (Va. 2003) (determining if an adequate foundation has been laid for the admission of an expert opinion is an exercise of the trial court's discretion, to be made in light of all the testimony produced). An objection arguing a lack of personal knowledge would have had no merit because the foundation of Det. Gross's identification was already before the trial court. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [the petitioner] could not demonstrate an error entitling him to relief."); *see also, Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (holding counsel is not constitutionally ineffective for not pursing meritless claims); *cf. Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions.") (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005)). In sum, Mr. White has also failed to establish a valid claim of ineffective assistance of counsel under the performance prong of *Strickland* and therefore has not established a substantial claim under *Martinez*.

Mr. White has not established that his ineffective assistance of trial counsel argument is substantial. Indeed, his allegation that trial counsel was ineffective for not arguing that Det. Gross did not have a personal knowledge of Mr. White's appearance fails under both prongs of *Strickland*, and therefore has not established cause to excuse the default of Claim III.

### IV. Merits Standard of Review (Claims I and II)

Under the Anti-terrorism Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

17

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772–73 (2010). That is, the state court's judgment "must be '"objectively unreasonable,"' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted); *see Harrington v. Richter*, 562 U.S. 86, 103 (2011) (noting a state decision is unreasonable only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "'highly deferential standard' . . . 'demands that state court decisions be given the benefit of the doubt.'" *Renico*, 559 U.S. at 773 (citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.[11] "In reviewing a habeas petition, federal courts must presume the correctness of a

---

[11] The Fourth Circuit has recently emphasized the limitations on federal courts in reviewing merit decisions by state courts stating that federal courts

> are limited in the evidence [they] can consider when [they] evaluate the state court's adjudication of a particular constitutional claim. "By its plain terms, § 2254(d)(2) limits our review to the evidence placed before the state PCR court." *Elmore [v. Ozmint]*, 661 F.3d [783, 850 (4th Cir. 2011)]. Because the "backward-looking language [of § 2254(d)(1)] requires an examination of the state-court decision at the time it was made[,] . . . the record under review is limited to the record in existence at that same time." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

*Horner v. Nines*, 995 F.3d 185, 198 (4th Cir. 2021).

state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473–74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in *Strickland*. Under *Strickland*, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. *See Strickland*, 466 U.S. at 687. The United States Supreme Court has characterized AEDPA deference in the context of "a *Strickland* claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." *Knowles*, 556 U.S. at 123; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016). In commenting on double deferential review, the Fourth Circuit held that "AEDPA and *Strickland* thus provide 'dual and overlapping' lenses of deference, which we apply 'simultaneously rather than sequentially.'" *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir. 2022) (quoting *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020)). "This double-deference standard effectively cabins our review to a determination of 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.* (quoting *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016)). "[B]ecause counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' . . . federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods*, 578 U.S. at 117 (citations omitted). "Section 2254(d) codifies the view that habeas corpus is '"a guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.'" *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102–03).

*Strickland*'s first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

19

Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. The "basic lesson" of *Strickland* is that "[j]udicial scrutiny of counsel's performance must be highly deferential." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *Id.*

*Strickland*'s second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Valentino*, 972 F.3d at 580 (quoting *Harrington*, 562 U.S. at 86). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 592 U.S. 385, 392 (2021) (alteration in original) (quoting *Knowles*, 556 U.S. at 123).

### A. Claim I

Claim I, designated as Claim (b)(2) in state habeas, alleges that trial counsel was ineffective for failing to interview and subpoena Mr. White's co-defendant, Cahill. Dkt. 1 at 6. The Virgina Supreme Court found that this claim failed to meet either prong of the *Strickland* test.

> The record, including the trial transcript, trial exhibits, and the affidavit of petitioner's trial counsel, demonstrates that, around 6:30 on the morning of March 31, 2019, police were called to investigate a burglary at Hitchcock's home. Among other items, Hitchcock discovered his wallet, which contained several of his credit cards, his rifle and rifle case, and his black Hyundai Sonata were missing from his home.
>
> While police were investigating the burglary, they received a report regarding someone tampering with an automobile outside 8965 Belgrave Avenue, a few

blocks away. When an officer arrived to investigate, he found a vehicle with a broken window and a stolen red truck with stolen plates. In the back of the truck, the officer found a rifle, later identified as the one stolen from Hitchcock's home. The officer viewed security video from the Belgrave Avenue homeowner's security cameras, and the recording showed the red truck and a black vehicle, which the trial judge later determined was Hitchcock's Sonata, arriving together outside the owner's residence. The video showed the Sonata backing into the red truck's door, the two men who had been driving the Sonata and the truck trying to break into another car, and both men subsequently fleeing together in the Sonata.

Around 8:16 the same morning, police found Hitchcock's Sonata in a Walmart parking lot with a large dent in the rear. Transaction records from the same Walmart showed that Hitchcock's credit cards had been used at some of the store's registers. Security video from the Walmart's cameras showed two men arriving in the Sonata and entering the store around 6:30 a.m., leaving in the Sonata, and returning again around 7:30 a.m. The recordings further showed the individuals from the Sonata trying to use multiple credit cards at the registers identified in the transaction records involving Hitchcock's credit cards and passing the cards to each other before exiting the store again at 8:22 a.m. After reviewing still shots from the Walmart security recordings, Detective Gross identified petitioner and Cahill as the individuals attempting to use Hitchcock's stolen cards at the Walmart. Prior to petitioner's trial, Cahill pled guilty to burglary, credit card theft, and possession of a firearm for his participation in the crimes described above. Thus, the record contains ample evidence that petitioner and Cahill committed these crimes together.

In his affidavit, counsel explains he made a tactical decision not to call Cahill. Counsel spoke with Cahill's attorney and consulted with petitioner, but ultimately decided against calling Cahill because he determined it would have opened the door to incriminating evidence. Petitioner has failed to overcome the "strong presumption that counsel's" decision not to subpoena Cahill and call him as a witness was a reasonable tactical decision entitled to deference. *See Strickland*, 466 U.S. at 689 (stating habeas petitioner making a claim of ineffective assistance must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.") (internal quotation marks and citations omitted); *Gonzalez v. United States*, 553 U.S. 242, 249 (2008) (recognizing the decision whether to call a witness depends in part "upon tactical considerations of the moment and the larger strategic plan for the trial"). Given that the record establishes Cahill perpetrated these crimes with petitioner, the record supports counsel's assertion that subpoenaing Cahill as a witness could have opened the door to incriminating evidence, and petitioner has failed to contradict counsel's assertion as he has not proffered Cahill's expected testimony or any other evidence to support his contention that Cahill would have exonerated him. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is

a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.[12]

Dkt. 15-5 at 2–4.[13]  Because the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts, Claim I will be dismissed.  *See* 28 U.S.C. § 2254(d).

  *B. Claim II*

  Claim II, designated as Claim (b)(1) in state habeas, alleges that trial counsel was ineffective for failing to interview and subpoena an eyewitness to the crime scene.  Dkt. 1 at 8.

---

[12] Mr. White attempted to cure his failure to proffer in his reply to the motion to dismiss in state habeas by asserting "for the first time that Cahill would have testified petitioner 'was not involved in the burglary and that he called [petitioner] to meet him after he left the crime scene.'" Dkt. 15-5 at 4 n.1 (alteration in original).  The Virginia Supreme Court found that this allegation was defaulted under Virginia Code § 8.01-654(B)(2), which requires that a habeas petition "shall contain all allegations the facts of which are known to petitioner at the time of filing;" and also Va. S. Ct. Rule 5:7(e) which states that "a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the Court to do so." *Id.* at 4 n.1.  The Virgina Supreme Court noted that Mr. White had not asserted that the Cahill proffer was "unknown to him at the time he filed his petition," and that he had "neither sought nor been granted leave to amend his original petition." *Id.*

[13] Mr. White admits in his response "that he became involved in this crime after the burglary occurred[,] which would make petitioner not guilty of conspiracy to commit burglary and the actual burglary." Dkt. 20 at 7.  His admission is inconsistent with his insistence at sentencing that he was innocent, (CR 148, 149), and establishes that trial counsel's belief that calling Cahill would result in "incriminating evidence" was well-founded because Cahill would have had to testify to Mr. White's involvement in the crimes subsequent to the burglary, which might have placed him in possession of firearms—charges that were struck. *See, supra* at note 2.  Further, to the extent Mr. White complains about counsel going through Cahill's attorney, trial counsel had no choice.  An attorney cannot ethically interview a represented party.

  Rule 4.2 of the Virginia Rules of Professional Conduct states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."
  . . .

  [T]he Rule applies even though the represented person initiates or consents to the communication.

*Zaug v. Va. State Bar*, 737 S.E.2d 914, 917 (Va. 2013).

The Virgina Supreme Court found that this claim failed to satisfy the prejudice prong of *Strickland*. Dkt. 15-5 at 2 ("[P]etitioner failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.").

Mr. White did not provide the name of the witness in state court or in his federal petition, Dkt. 1 at 8, and he has also failed to indicate at which of the three crime scenes (Hitchcock's house, 8965 Belgrave Avenue, or Walmart) the witness was present on the date of the offense. *See, supra* at 20–21.[14] In his response to the motion to dismiss in this Court, Mr. White attempts to cure the deficiencies in his federal petition, by alleging in his response that the "discovery" provided in the state criminal proceedings indicated that "there was a[n] eyewitness to the burglary as it occurred at 8965 Belgrave Avenue" and "the police report" indicated that the eyewitness "observed one white male at the scene of the crime." Dkt. 20 at 9. In a later response to the motion to dismiss, Mr. White alleges that the eyewitness was at the scene of the "burglary." Dkt. 25 at 7. Notably, the "burglary" occurred at the Hitchcock residence, and not at 8969 Belgrave Avenue. *See* Dkt. 15-2 at 58. Although Mr. White now alleges the eyewitness was at a different crime scene, he has still not identified the witness and he has not submitted the witness's affidavit, much less the police report, which is his basis for the claim. *See supra* at 11.

At best, Mr. White is confused about where the alleged eyewitness was on the date of the crimes. Nevertheless, the provision of either address is an additional fact that he did not include

---

[14] In addition, the record establishes that there was no eyewitness at Hitchcock's residence, where the burglary took place. CR at 243, 254, 266. Video footage establishes that Mr. White and Cahill were together at the Walmart and that there were two people at 8965 Belgrave Avenue. CR at 253, 254 (the video shows "two gentlemen that just walked from the parking lot" into the Walmart; the "two occupants" of the vehicle sat "in the vehicle for approximately 20 minutes"). The video footage from 8965 Belgrave Avenue also establishes that two people were outside the residence. CR at 234 ("two" people are standing by the truck in front of 8965 Belgrave Avenue). In addition to the inadequate proffer, Mr. White stated at the beginning of the trial during the plea colloquy when asked if he had "any witnesses to testify on [his] behalf," he responded "No, sir." CR at 176–77.

in his state habeas. Dkt. 15-4 at 19. Further, Mr. White admitted in state habeas that he had

discussed the police report from which he obtained this information about the witness with counsel

*before* trial. *Id.* In short, Mr. White knew about this witness before he drafted his state habeas and

failed to include it. As such, this is a matter that Mr. White could have alleged in his state habeas

proceeding. The questionable relevance aside, this Court's review under § 2254(d)(1) is "limited

to the record that was before the state court that adjudicated the claim on the merits." *Pinholster,*

563 U.S. at 181; *Horner v. Nines,* 995 F.3d 185, 198 (4th Cir. 2021).

Because the state court decision was not contrary to, nor an unreasonable application of,

clearly established federal law, and was not based on an unreasonable determination of the facts,

Claim II will be dismissed. *See* 28 U.S.C. § 2254(d).[15]

## VI. Certificate of Appealability

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the

---

[15] Mr. White has pending motions to appoint counsel, which will be denied. Dkts. 10, 21. Having determined that the writ should be denied, there is no need for counsel in this matter. A petitioner seeking habeas corpus relief in the federal courts has no right to counsel. *See McCleskey v. Zant,* 499 U.S. 467, 495 (1991); *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances." *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984). Petitioner has presented no such exceptional circumstances. In addition, appointment of counsel is not required in the absence of an order granting discovery or an evidentiary hearing. *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). The claims in the instant petition did not require discovery and concerned historical matters based upon the record that did not require a hearing.

Lastly, Mr. White included a request for an evidentiary hearing at the end of one of his responses to the motion to dismiss within a section entitled "Closing Argument." Dkt. 25 at 10. The purpose of the hearing would be to cure his failures to proffer. *Id.* As noted above, this Court is limited to the record before the state court, which did not include this alleged evidence even though Mr. White was aware of it before his trial. *See Pinholster,* 563 U.S. at 181; *Horner,* 995 F.3d at 198. In the Fourth Circuit, the reasonableness of a state court decision is evaluated "in light of the evidence presented in the State court proceeding." *Jones v. Clarke,* 783 F.3d 987, 991 (4th Cir. 2015) (citation omitted); *see supra* at 6, 18–19. Consequently, his request is denied.

applicant." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts; *see also* 28 U.S.C. § 2253(c)(1)(A) (prohibiting an appeal to the respective court of appeals from a final order concerning a habeas corpus petition "[u]nless a circuit justice or judge issues a certificate of appealability"). A certificate of appealability ("COA") will not issue absent "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court dismisses a petition solely based on procedural grounds, and does not address the underlying constitutional claims, *Slack* instructs the court to issue a COA only when the petitioner demonstrates that "jurists of reason" would find both the petition's "claim of the denial of a constitutional right" and the district court's dispositive procedural ruling "debatable[.]" *Id.* at 484. As to whether the procedural ruling is "debatable[,]" *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the case," "jurists of reason" could not find "that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

Here, Mr. White's petition will be dismissed, in part, because Claim III was simultaneously exhausted and defaulted and because he failed to establish cause, which precluded federal habeas review. Where such "a plain procedural bar is present[,]" this Court finds that "jurists of reason" would not and could not "find it debatable whether the district court was correct in its procedural ruling." *Id.* Thus, this Court will not issue a COA to him for Claim III.

When the district court denies relief on the merits, a prisoner satisfies this standard by

demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong.  *Id.*  For the reasons stated above, as to Claims I and II, the Court has reviewed the record and concluded that Mr. White has not made the requisite showing with regard to these claims.  Accordingly, the Court denies a COA for Claims I and II as well, and dismisses this petition.

Petitioner may, however, seek a COA from the United States Court of Appeals for the Fourth Circuit.  Where a district court denies a COA, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts.

### VII. Conclusion

For the foregoing reasons, the motion to dismiss the petition, Dkt. 13, must be granted and the petition must be dismissed with prejudice and an appropriate Order shall issue.

Entered this 14 day of March, 2025.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge